T.C. Memo. 1996-89

UNITED STATES TAX COURT

KINGMAN K. BABCOCK AND LILLIAN L. BABCOCK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19980-93.                Filed February 29, 1996.

<u>Gary J. Gleba</u>, for petitioners.

<u>Randall P. Andreozzi</u>, for respondent.

MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) of the Code and Rules 180, 181, and 182.
Unless otherwise indicated, all section numbers refer to the
Internal Revenue Code for the taxable year in issue, and all Rule
numbers refer to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $4,681. The issue for decision is the amount petitioners are entitled to deduct as a charitable contribution under section 170 with respect to foster child care expenses.

Some of the facts in the case have been stipulated and are so found. Petitioners resided in Pittsford, New York, at the time they filed their petition.

For clarity and convenience, the findings of fact and opinion have been combined.

Throughout 1991, petitioners were certified by the Monroe County Department of Social Services (Monroe County), an agency of the New York State Department of Social Services (Department of Social Services), as maintaining a suitable home for the care and boarding of foster children. The Department of Social Services describes the issuance of a "Certificate to Board" as follows:

> An authorized child-caring agency -- either the local department of social services or a private child-caring agency -- issues a certificate to a family desiring to board children who are under the care of the agency, after a home study indicates that the family meets the [New York State Department of Social Services'] certification requirements. The agency supervises the children when they are placed in boarding care and makes plans for their future, with their consent and with that of parents and foster (boarding) parents. <u>The agency is financially responsible for the needs of the children in foster care</u>. [Emphasis added.]

The regulations of the Department of Social Services concerning the physical requirements of a certified foster home are extensive, and include, among others, the following:

> (1)  Physical facilities of the foster home shall be in good condition and present no hazard to the health and safety of the children.

> (2)  Foster homes shall be in substantial compliance with all applicable provisions of State and local laws, ordinances, rules and regulations.

> (3)  The physical space, construction and maintenance of each foster home and premises shall be in good repair and kept in a sufficiently clean and sanitary condition so that the physical well-being as well as a reasonable degree of physical comfort is assured the members of the foster family.

> (4)  Foster homes shall have separate bedrooms for children of the opposite sex over four years of age.

                *   *   *   *   *   *   *

As foster parents, petitioners have boarded several foster children since 1980.  In 1991, they cared for a young girl, then aged 6, in their home.  Petitioners first received this foster child into their home in 1989.  Petitioners' foster child, their adopted daughter, and their son resided in petitioners' household in 1991.  Two other sons resided outside petitioners' household.

For 1991, petitioners were reimbursed by Monroe County in the amount of $9,539 for the care of their foster child.  This reimbursement included "board payments" of $8,559, a "clothing allowance" of $509, and "special allowances" of $471.

The Foster Parent Manual, published by the New York State Department of Social Services and supplemented by the Monroe

County Department of Social Services, defines "board payments",

"clothing allowance", and "special allowances" as follows:

VIII.  Board Payments

Foster parents are reimbursed for the foster child's care through board payments which are standardized according to the child's age.  The board rate covers the cost of the child's food, personal care items, allowance as well as his share of the cost of shelter, household incidentals, furnishings, family recreation and transportation related to shopping, church, school or family recreational activities.

*   *   *   *   *   *   *

X.  Clothing Allowance

As soon as possible following the child's placement, the foster parent should review the child's wardrobe with the child's caseworker to decide what is needed to complete the child's immediate clothing needs.  The child's caseworker will then advise the foster parent how much of the Basic Clothing Allowance will be issued to address the child's immediate clothing needs. * * *

If the child continues in care, the remainder of the Basic Clothing Allowance will be issued to address his clothing needs during the first year of placement. Thereafter a Replacement Clothing Allowance will be issued twice a year * * * .  The amount of money, which is set by the State, is related to the child's age and should be sufficient to provide adequate and attractive clothing.

*   *   *   *   *   *   *

XI. Special Allowances

Special allowances reimburse foster parents for the cost of attire, activities/events, transportation or special items which enhance a foster child's self esteem, encourage his ego development or assist his treatment plan and have <u>prior approval by the child's caseworker</u>.

*   *   *   *   *   *   *

The following is a list of approved expenses:
 A. <u>Attire</u>
    1.   Uniforms for special clubs or sports (ie. Scouts, soccer etc.)
    2.   Rental of graduation cap and gown.
    3.   Purchase or rental of prom attire * * *.

 B. <u>Activities/Events</u>
    1.   Club fees and dues. * * *
    2.   School field trips. * * *
    3.   Music lessons.
    4.   Activities * * * (ie. art, museum, swimming).

                *   *   *   *   *   *   *

The following will <u>not</u> be approved as a special allowance.
    1. Gifts.  (ie. birthday, Christmas)
    2. Transportation for family recreational activities or shopping.
    3. Special clothes for confirmations, first communion, baptism or [bar mitzvahs].
    4. School Uniforms.

On Schedule A of their 1991 Federal income tax return, petitioners reported a charitable contribution "by cash or check" of $24,286.  Of this amount, contributions of $9,185 to various charities are not in dispute.  The remaining $15,101 was claimed by petitioners as excess foster care expenses over amounts reimbursed to them by Monroe County.

Petitioners calculated the $15,101 figure in the following manner.  First, based on the number of people in their household (five), petitioners totaled the following "indirect expenses" for 1991 and allocated one-fifth to their foster child:  Fair rental value of petitioners' home at 30 Trowbridge Trail; fair rental value of petitioners' summer cottage at 32 Ladoga Park Road,

Lansing, New York; fair rental value of all furnishings in their home and cottage; fair rental value of their 2-week use of a condominium at Sanibel Island, Florida; fair rental value of petitioners' boat, sailboat, and waverunner; utilities; landscaping and repair expenses; country club dues and expenses; and automobile mileage for family trips. The sum of these items, as initially computed by petitioners, was $123,507. One-fifth of this equaled $24,701.

Next, petitioners added actual out-of-pocket expenses attributable to their foster child for 1991. These included the following: Food expenses directly attributable to their foster child; clothing/toys purchased; educational expenses; babysitting expenses; medical expenses; recreation expenses; and the allowance given to their foster child. The sum of these out-of-pocket expenses, as initially calculated by petitioners, was $6,438. The total for both the indirect and out-of-pocket expenses was $31,139.

Petitioners then reduced the amount of the indirect and out-of-pocket expenses by the $9,539 they received from Monroe County. This left an interim amount of $21,600.

Last, petitioners reduced the $21,600 by $6,499. This resulted in the $15,101 charitable contribution deduction claimed on their 1991 return for foster care expenses in excess of reimbursement.

At trial, petitioner husband explained the $6,499 reduction as follows:

> As we went through it [the return preparer's worksheet] item-by-item, I thought some items that we were using weren't primarily for the benefit of the child or the children, especially the condominium in Florida, and I * * * felt we should back those items out, so we backed some items out and reduced the figure.

Petitioner husband believed their charitable deduction should be more conservative than the amount calculated by their return preparer. Petitioner husband eliminated the allocated portion of the fair rental value of the Florida condominium, boat, sailboat, and waverunner.

Respondent disallowed petitioners' $15,101 charitable deduction attributable to unreimbursed foster care expenses.

The parties stipulated that petitioners made the following direct out-of-pocket expenditures for the care of their foster child in 1991:

| | |
|---|---|
| Food | $1,739 |
| Clothing/toys | 2,985 |
| Education | 150 |
| Babysitting | 1,200 |
| Medical | 50 |
| Recreation | 360 |
| Allowance | 102 |
| Total | $6,586 |

Respondent acknowledges that petitioners are entitled to a charitable contribution deduction for their direct out-of-pocket expenses in excess of amounts reimbursed by Monroe County. Respondent argues that although petitioners have incurred direct

out-of-pocket expenses of $6,586, they were reimbursed $9,539 by Monroe County, and therefore there are no unreimbursed direct out-of-pocket expenses for which petitioners are entitled to a charitable deduction under section 170.

On brief, petitioners concede that they are not entitled to a deduction for one-fifth of their indirect expenses; i.e., the fair rental value of their home, vacation cottage, utilities, etc. Petitioners contend, however, that the $8,559 received from Monroe County as a board payment reimburses (or partially reimburses) them for the one-fifth of these indirect costs attributable to their foster child. Petitioners further contend that the direct out-of-pocket expenses listed above have only been reimbursed to the extent of the $509 clothing allowance. (Petitioners neglect to mention the $471 of special allowances they received.) Consequently, petitioners claim they are entitled to a charitable contribution deduction in the amount of $6,077 for their unreimbursed direct out-of-pocket expenses ($6,586 out-of-pocket expenses - $509 clothing allowance = $6,077).

In the alternative, petitioners argue that if this Court finds that they have been reimbursed by a portion of the board payment for the food expenses of $1,739 directly attributable to their foster child, they should be allowed a charitable contribution deduction of $4,338 for the unreimbursed direct out-of-pocket expenses incurred to care for their foster child

($6,586 out-of-pocket expenses - $1,739 portion of board payment for food expenses  - $509 clothing allowance = $4,338).

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners bear the burden to prove they are entitled to the deductions they claim. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a).

Section 170 allows a deduction for any charitable contribution to or for the use of an entity organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. Section 1.170A-1(g), Income Tax Regs., provides, in pertinent part, that "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." In applying section 1.170A-1(g) to amounts expended by individuals who provide foster care, the Internal Revenue Service has ruled that "foster parents are entitled to a charitable contribution deduction within the limitations of section 170 of the Code for any unreimbursed out-of-pocket expenses incurred in supporting a foster child." Rev. Rul. 77-280, 1977-2 C.B. 14, 17.

There is no question that the foster care reimbursements petitioners received from Monroe County are not taxable income under section 131. In the instant case, petitioners claim their total foster care expenses exceed their reimbursement. As

mentioned, petitioners are entitled to deduct unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible. Sec. 1.170A-1(g), Income Tax Regs. In other words, although Congress granted most foster parents relief from tax recordkeeping in section 131 (as detailed in Cato v. Commissioner, 99 T.C. 633, 641-643 (1992)), if foster parents keep records which show they expended more than they were reimbursed, they are entitled to deduct the excess under section 1.170A-1(g). (We note that the New York State Department of Social Services and Monroe County require foster parents to keep extensive records concerning their foster children: "Foster parents are to keep specific financial, school, health, visitation and child adjustment records/logs".) Thus, in this case we must decide which expenses have been reimbursed by the $9,539 petitioners received from Monroe County to determine the unreimbursed expenses, if any.

The Monroe County Department of Social Services, the agency responsible for petitioners' foster child, is an organization, contributions to which are deductible. For 1991, petitioners received from Monroe County a board payment of $8,559, a clothing allowance of $509, and special allowances of $471, for a total reimbursement of $9,539.

Concerning the board payment, the Monroe County Department of Social Services Foster Parent Manual explains that the

board rate covers the cost of the child's food, personal care items, allowance as well as his share of the cost of shelter, household incidentals, furnishings, family recreation and transportation related to shopping, church, school or family recreational activities.

The Foster Parent Manual also specifically designates that a foster child's allowance "is to be taken out of the monthly board rate." Additionally, the Monroe County Department of Social Services Foster Boarding Home Rate Schedule provides that the board rate "includes the cost of shelter, food, personal care, household furnishings and operations, education and recreation, transportation and parent supervision." Further, as stated by respondent on brief:

[Monroe] County's reimbursement rates for foster parents are carefully calculated and designed to reimburse foster parents for the reasonable costs of caring for their foster children, including shelter, utilities, and other general household expenses. [Emphasis added.]

We must agree with petitioner wife that all the attendant expenses associated with raising a foster child are simply not covered by governmental funds. We also observe that petitioners are exceptional individuals. Even though they are relatively affluent, they have the generosity to undertake the care of those less fortunate.

Concerning the special allowances payments, the Foster Parent Manual states that special allowances "reimburse foster parents for the cost of attire, activities/events, transportation or special items which enhance a foster child's self esteem,

encourage his ego development or assist his treatment plan".  For 1991, petitioners received the $471 of special allowances for the following expenses (which comprise a portion of the stipulated out-of-pocket expenses under the categories of education and recreation):  Ski program $50; swimming $72; tutoring $240; parking for jazz dance lessons $109.

Based on the foregoing, we find that the board payment of $8,559 and the special allowances of $471 reimbursed petitioners for the following out-of-pocket expenses:  Food expenses of $1,739; education expenses of $150; recreation expenses of $360; and allowance expenses of $102.  We find that the remainder of the board payment reimbursed petitioners, at least partially, for their indirect expenses with respect to their foster child.

For 1991, petitioners also received a clothing allowance of $509, which was a partial reimbursement for the stipulated out-of-pocket clothing expenses of $2,985.

On this record, we conclude that the following out-of-pocket expenses attributable to petitioners' foster child were not reimbursed:

| | |
|---|---|
| Clothing/toys | $2,476 |
| Babysitting | 1,200 |
| Medical | 50 |
| Total | $3,726 |

In summary, petitioners incurred $6,586 in direct out-of-pocket expenses, and were reimbursed $2,860 for these expenses. Consequently, petitioners are entitled to a charitable deduction

in the amount of $3,726 for the unreimbursed out-of-pocket expenses they incurred in providing care and support to their foster child in 1991.

To reflect the foregoing,

<u>Decision will be entered under Rule 155.</u>